SUMMONS - CIRCUIT COURT                                                    3101 (Rev. 12/20)

**STATE OF ILLINOIS**              **UNITED STATES OF AMERICA**          **COUNTY OF DU PAGE**
                    **IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

SHERRY ANTONOPOULOS,                       **2022LA000116**
on behalf of Plaintiff and a class,
                                           **CASE NUMBER**
                         PLAINTIFF
                                           **DATE OF SERVICE**
            VS
                                    TO BE INSERTED BY OFFICER ON COPY LEFT WITH
                                           DEFENDANT OR OTHER PERSON

FIRSTSOURCE ADVANTAGE,                        **SUMMONS**
LLC,
                                            **CIRCUIT COURT**
                        DEFENDANT
                                                                        File Stamp Here

                            ☒ ORIGINAL  ☐ ALIAS

To each Defendant: _____

You are Summoned and Required to file an answer to the complaint in this case, a copy of which is hereto attached, or
otherwise file your appearance in the office of the Clerk of the Circuit Court, 505 N. County Farm Road, Wheaton,
Illinois, within 30 days after service of this summons not counting the day of service.
       If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.


                                    To the Officer
This summons must be returned by the officer or other person to whom it was given for service, with endorsement of
service and fees, if any, immediately after service and not less than three (3) days before the date of remote appearance.
If service cannot be made, this summons shall be returned so endorsed.
              This summons may not be served later than thirty (30) days after its date.

                                                    **WITNESS:**
Name:   Daniel A. Edelman          ☐ Pro Se

DuPage Attorney Number: 9425                 **CANDICE ADAMS,** Clerk of the Eighteenth
                                             Judicial Circuit Court, and the seal thereof,
Attorney for:  Plaintiff                     Wheaton, Illinois    2/1/2022 3:29 PM

Address: 20 S. Clark Street, Ste. 1500

City/State/Zip: Chicago, IL 60603                        Candice Adams                CK
                                                            Date
Telephone Number:  312-739-4200
                                                         Deputy Clerk
Email:   Courtecl@edcombs.com


**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account
with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a
service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp or
talk to your circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person
or by mail. Ask your local clerk for more information or visit www.illinoislegalaid.org.**

                                            **NOTE:**
The filing of an appearance or answer with the Circuit Court Clerk requires a statutory filing fee, payable at the time of
filing. If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a
court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You
can also ask your local circuit clerk's office for a free waiver application.

If you need legal advice concerning your legal responsibility as a result of this summons being serviced upon you
and you don't have a lawyer, you can call the DuPage Bar Association, Lawyer Referral Service at 630-653-9109.

                   **CANDICE ADAMS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©**
                              **WHEATON, ILLINOIS 60187-0707**

SUMMONS - CIRCUIT COURT                                                                    3101 (Rev. 12/20)

## SHERIFF'S FEES

Service and return ......................................................................... $ _____

Miles _____ ............................................................... $ _____

**Total** ................................................................................................... $ _____

Sheriff of _____ County

## SHERIFF'S RETURN

I certify that I served this summons on defendant as follows:

☐  (a)  (Individual - **personal**):
By leaving a copy and a copy of the complaint with each individual  as follows:

☐  (b)  (Individual - **abode**):
By leaving a copy and a copy of the complaint at the usual place of abode of each individual with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and the complaint in a sealed envelope with postage fully prepaid, addressed to each individual at the usual place of abode, as follows:

☐  (c)  (Corporation):
By leaving a copy and a copy of the complaint with the registered agent, officer, or agent of each corporation as follows:

☐  (d)  (Other service):

☐  (e)  (Unable to Serve):
By _____ ,   Deputy Badge Number: _____

Name of Defendant_____          Name of Defendant _____ _____

Name of Person                                      Name of Person
summons given to _____          summons given to  _____

Sex_____ Race_____ Approximate age_____        Sex _____ Race _____ Approx. age _____

Place of service____ _____     Place of service _____ _____

City , State   _____            City , State   _____ _____

Date of service _____ Time_____          Date of service _____ Time _____

Date of Mailing_____          Date of Mailing _____

                                                    Sheriff of _____ County

Special Process Server of_____         County Illinois License #_____

                                                    By _____

**CANDICE ADAMS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60187-0707**

Atty. No. 9425

### IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL CIRCUIT
### DUPAGE COUNTY, ILLINOIS

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 16533396
2022LA000116
FILEDATE: 2/1/2022 3:29 PM
Date Submitted: 2/1/2022 3:29 PM
Date Accepted: 2/2/2022 10:20 AM
CK

SHERRY ANTONOPOULOS,　　　　　）
on behalf of Plaintiff and a class,　　）
　　　　　　　　　　　　　　　　）
　　　　　　　　Plaintiff,　　　　）
　　　　　　　　　　　　　　　　）
　　vs.　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　）　　2022LA000116
FIRSTSOURCE ADVANTAGE, LLC,　）
　　　　　　　　　　　　　　　　）
　　　　　　　　Defendant.　　　　）

### COMPLAINT – CLASS ACTION

#### INTRODUCTION

1.　　　Plaintiff Sherry Antonopoulos brings this action to secure redress regarding unlawful collection practices engaged in by Defendant Firstsource Advantage, LLC.  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

#### JURISDICTION AND VENUE

2.　　　Jurisdiction of this Court arises under 15 U.S.C. §1692k(d).

3.　　　Personal jurisdiction in Illinois is proper because Defendant sent its collection letters into Illinois.

4.　　　Venue in this county is proper because Defendant's collection letter was received here.

#### PARTIES

#### Plaintiff

5.　　　Plaintiff Sherry Antonopoulos is a natural person residing in Carol Stream,  Illinois.

#### Defendant

6.　　　Defendant Firstsource Advantage, LLC is a limited liability company organized under New York law with its principal office at 205 Bryant Woods South, Amherst, NY 14228.  It does

-1-

business in Illinois. Its registered agent and office is C T Corporation System, 208 S. La Salle St., Suite 814, Chicago, IL 60604.

7.      Defendant Firstsource Advantage, LLC is engaged in the sole or principal business of a collection agency, collecting consumer debts and using the mails and telephone system for that purpose.

8.      Upon information and belief, almost all of Defendant Firstsource Advantage, LLC's resources are devoted to debt collection.

9.      Upon information and belief, almost all of Defendant Firstsource Advantage, LLC's revenue is derived from debt collection.

10.     Upon information and belief, almost all of Defendant Firstsource Advantage, LLC's expenses are related to debt collection.

11.     Upon information and belief, Defendant Firstsource Advantage, LLC has more than 900 employees engaged in debt collection.

12.     Defendant Firstsource Advantage, LLC is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6), as a person who uses one or more instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.

13.     Defendant Firstsource Advantage, LLC is a collection agency as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

14.     Defendant Firstsource Advantage, LLC holds a license under the ICAA.

## FACTUAL ALLEGATIONS

15.     This action arises out of Defendant's attempts to collect a credit card debt incurred for personal, family or household purposes.

16.     On or about December 20, 2021, Defendant Firstsource Advantage, LLC caused a letter vendor to send Plaintiff the form letter in Exhibit A.

17.     The letter bears markings that are characteristic of one generated by a letter

-2-

vendor. In addition, public court filings indicate that Firstsource Advantage, LLC uses a letter vendor.

18.     In order to have the letter vendor send Plaintiff the letter in Exhibit A, Defendant had to furnish the letter vendor with Plaintiff's name and address, the status of Plaintiff as a debtor, details of Plaintiff's alleged debt, and other personal information.

19.     The letter vendor then populated some or all of this information into a prewritten template, printed, and mailed the letter to Plaintiff.

20.     Plaintiff never consented to having Plaintiff's personal and confidential information, concerning the debt or otherwise, shared with anyone else.

21.     Due to Defendant's communication to this letter vendor, information about Plaintiff is within the possession of an unauthorized third-party, which has intruded into Plaintiff's private affairs. *Mastel v. Miniclip SA*, 2:21cv00124, 2021 U.S. Dist. LEXIS 132401, 2021 WL 2983198 (E.D. Cal. July 14, 2021).

22.     If a debt collector "conveys information regarding the debt to a third party -- informs the third party that the debt exists or provides information about the details of the debt -- then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

> As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.

> Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."

> The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge.

Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.

Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*, Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas elaborated further:

> A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads, and so on ad infinitum.

The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers. Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing. Experian reports that it manages data on more than 300 million consumers and 126 million households, while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior. In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable." In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' accounts.

National Consumer Law Center, Fair Credit Reporting (9th ed. 2017) § 18.1,

23.     Defendant unlawfully communicates with the unauthorized third-party letter vendor solely for the purpose of streamlining its generation of profits without regard to the propriety and privacy of the information which it discloses to such third-party.

24.     In its reckless pursuit of a business advantage, Defendant disregarded the known, negative effect that disclosing personal information to an unauthorized third-party has on consumers.

## COUNT I – FDCPA

25.     Plaintiff incorporates paragraphs 1-24.

26.     The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

27.     In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

28.     Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

29.     The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

30.     Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 et seq.

31.     The FDCPA defines "communication" at 15 U.S.C. § 1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

32.     The sending of an electronic file containing information about Plaintiff's purported debt to a letter vendor is therefore a communication.

33.     Defendant's communication to the letter vendor was in connection with the collection of a debt since it involved disclosure of the debt to a third-party with the objective being

-5-

communication with and motivation of the consumer to pay the alleged debt.

34.     In limiting disclosures to third parties, the FDCPA states, at 15 U.S.C. §1692c(b): "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

35.     The letter vendor used by Defendant as part of its debt collection effort against Plaintiff does not fall within any permitted exception provided for in 15 U.S.C. §1692c(b).

36.     Defendant violated 15 U.S.C. §1692c(b) when it disclosed information about Plaintiff's purported debt to the employees of an unauthorized third-party letter vendor in connection with the collection of the debt. *Hunstein v. Preferred Collection & Mgmt. Servs.,* 994 F.3d 1341 (11th Cir. 2021), upon rehearing, No. 19-14434, 2021 U.S. App. LEXIS 32325 (11th Cir., Oct. 28, 2021), vacated upon grant of rehearing en banc, 2021 U.S. App. LEXIS 34202 (11th Cir. Nov. 17, 2021).

37.     Defendant violated 15 U.S.C. §1692f by using unfair means in connection with the collection of a debt – disclosing personal information about Plaintiff to third parties not expressly authorized under the FDCPA.

## CLASS ALLEGATIONS

38.     Plaintiff brings this claim on behalf of a class.

39.     The class consists of (a) all individuals in DuPage County (b) with respect to whom Defendant had a letter prepared and sent by a letter vendor (c) on behalf of the same creditor as Exhibit A (d) which letter was sent at any time during a period beginning 1 year prior to the filing of this action and ending 30 days after the filing of this action.

40.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

41.     On information and belief, based on the size of Defendant's business operations and the use of form letters, there are more than 40 members of the class, and the class is so numerous that joinder of all members is not practicable.

42.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendant's practice as described above violates the FDCPA.

43.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

44.     A class action is appropriate for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible.

    b.     Members of the class are likely to be unaware of their rights;

    c.     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

    i.     Statutory damages;

    ii.     Attorney's fees, litigation expenses and costs of suit;

    iii.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

45.     Plaintiff incorporates paragraphs 1-24.

46.     The Illinois Collection Agency Act reflects a determination that "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is further declared to be the public policy of this State to protect consumers against debt collection abuse." 225 ILCS 425/1a.

47.     225 ILCS 425/9(a)(21) prohibits a collection agency or debt buyer "Disclosing or threatening to disclose information relating to a debtor's debt to any other person except where such other person has a legitimate business need for the information or except where such disclosure is permitted by law."

48.     The instances in which disclosure is permitted by law are set forth in 225 ILCS 425/9.2(b), which  provides that "Except as provided in Section 9.1 of this Act [225 ILCS 425/9.1] [relating to location information], without the prior consent of the debtor given directly to the collection agency, the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a collection agency may not communicate, in connection with the collection of any debt, with any person other than the debtor, the debtor's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the collection agency."

49.     A mail vendor does not have "a legitimate business need for the information" and disclosure to a mail vendor is prohibited by  225 ILCS 425/9.2(b).

50.     There is a private right of action for violation of 225 ILCS 425/9, *Sherman v. Field*

-8-

*Clinic,* 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

51.     As a result of the violation, Plaintiff's privacy was invaded.

## CLASS ALLEGATIONS

52.     Plaintiff brings this claim on behalf of a class.

53.     The class consists of (a) all individuals with addresses in DuPage County (b) with respect to whom Defendant had a letter prepared and sent by a letter vendor (c) seeking to collect a debt owed to the same creditor as Exhibit A (d) which letter was sent at any time during a period beginning 1 year prior to the filing of this action and ending 30 days after the filing of this action.

54.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

55.     On information and belief, based on the size of Defendant's business operations and the use of form letters, there are more than 40 members of the class, and the class is so numerous that joinder of all members is not practicable.

56.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether Defendant's practice as described above violates the ICAA.

57.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

58.     A class action is appropriate for the fair and efficient adjudication of this matter, in that:

     a.     Individual actions are not economically feasible.

     b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the

class and against Defendant Firstsource Advantage, LLC for:

      i.    Compensatory damages;

      ii.    Punitive damages;

      iii.    Costs;

      iv.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Julia Ozello
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com
Atty. No. 9425 (DuPage)

T:\38452\Pleading\Complaint_Pleading.wpd

# EXHIBIT A

December 20, 2021

**firstsource**

Firstsource Advantage LLC
205 Bryant Woods South
Amherst, NY 14228
1-800-773-7530 from
8am-8pm EST Monday- Friday and
8am-12pm EST Saturday
www.firstsourceadvantage.com

To: SHERRY L ANTONOPOULOS

Reference Number:

Firstsource Advantage, LLC is a debt collector. We are trying to collect a debt that you owe to

**Our information shows:**
You had a
account from
ending -

As of August 22, 2020, you owed:

Between August 22, 2020 and today:

You were charged this amount in interest + $0.00

You were charged this amount in fees + $0.00

You paid or were credited this amount toward the debt - $0.00

Total amount of the debt now:

**How can you dispute the debt?**
- Call or write to us by January 27, 2022, to dispute all or part of the debt. If you do not, we will assume that our information is correct.
- If you write to us by January 27, 2022, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or you may write to us without the form. You may also include supporting documents.

**What else can you do**
- Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by January 27, 2022, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.
- Contact us about your payment options.
- Pongase en contacto con nosotros para solicitar una copia de este formulario en español.

**Notice:** See reverse side for important information.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**How do you want to respond?**

I want to dispute the debt because I think:
This is not my debt
The amount is wrong
Other (please describe on the reverse or attach additional information)

I want you to send me the name and address of the original creditor

I enclosed this amount: $ _____

Make your check or money order payable to Firstsource Advantage, LLC. Include the reference number.

Quiero esta formulario en español

**Mail this form to:**

Atty. No. 9425

## IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 16533396
2022LA000116
FILEDATE: 2/1/2022 3:29 PM
Date Submitted: 2/1/2022 3:29 PM
Date Accepted: 2/2/2022 10:20 AM
CK

SHERRY ANTONOPOULOS,                    )
on behalf of Plaintiff and a class,     )
                                        )
                Plaintiff,              )
                                        )
        vs.                             )
                                        )
FIRSTSOURCE ADVANTAGE, LLC,             )   2022LA000116
                                        )
                Defendant.              )

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, Sherry Antonopoulos, respectfully requests that the Court order that this action, alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA"), may proceed on behalf of a class against Defendant Firstsource Advantage, LLC.

The class consists of  (a) all individuals in DuPage County (b) with respect to whom Defendant had a letter prepared and sent by a letter vendor (c) on behalf of the same creditor as Exhibit A, (d) which letter was sent at any time during a period beginning 1 year prior to the filing of this action and ending 30 days after the filing of this action.

Plaintiff is required to file a motion for class certification with the Complaint, *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.,* 2015 IL 118644, 48 N.E.3d 1060, and may request leave to supplement it later.

In support of this motion, Plaintiff states:

### NATURE OF THE CASE

1.      Plaintiff  Sherry Antonopoulos is a natural person residing in Carol Stream, Illinois.

2.      Defendant Firstsource Advantage, LLC is a collection agency engaged in the business of collecting debts.

-1-

3. Firstsource Advantage, LLC is engaged in the sole or principal business of collecting consumer debts, using the mails and telephone system for that purpose.

4. Upon information and belief, almost all of Defendant Firstsource Advantage, LLC's resources are devoted to debt collection.

5. Upon information and belief, almost all of Firstsource Advantage, LLC's revenues are derived from debt collection.

6. Upon information and belief, almost all of Firstsource Advantage, LLC's expenses are related to debt collection.

7. Upon information and belief, Defendant Firstsource Advantage, LLC has over 900 employees engaged in debt collection.

8. Firstsource Advantage, LLC is a "debt collector" within the meaning of the FDCPA.

9. Defendant Firstsource Advantage, LLC is a collection agency as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

10. Defendant Firstsource Advantage, LLC holds a license under the ICAA.

11. On or about December 20, 2021, Firstsource Advantage, LLC caused a letter vendor to send Plaintiff the form letter in Exhibit A.

12. In order to have the letter vendor send Plaintiff the letter in Exhibit A, Defendant had to furnish the letter vendor with Plaintiff's name and address, the status of Plaintiff as a debtor, details of Plaintiff's alleged debt, and other personal information.

13. The letter vendor then populated some or all of this information into a prewritten template, printed, and mailed the letter to Plaintiff.

14. The FDCPA defines "communication" at 15 U.S.C. § 1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

15. The sending of an electronic file containing information about Plaintiff's purported debt to a letter vendor is therefore a communication.

-2-

16.    Firstsource Advantage, LLC's communication to the letter vendor was in connection with the collection of a debt since it involved disclosure of the debt to a third-party with the objective being communication with and motivation of the consumer to pay the alleged debt.

17.    Plaintiff never consented to having Plaintiff's personal and confidential information, concerning the debt or otherwise, shared with anyone else.

18.    In limiting disclosures to third parties, the FDCPA states, at 15 U.S.C. §1692c(b): "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

19.    The letter vendor used by Firstsource Advantage, LLC as part of its debt collection effort against Plaintiff does not fall within any permitted exception provided for in 15 U.S.C. §1692c(b).

20.    The same conduct also violated the ICAA, 225 ILCS 425/9.

21.    225 ILCS 425/9(a)(21) prohibits a collection agency or debt buyer "Disclosing or threatening to disclose information relating to a debtor's debt to any other person except where such other person has a legitimate business need for the information or except where such disclosure is permitted by law."

22.    The instances in which disclosure is permitted by law are set forth in 225 ILCS 425/9.2(b), which provides that "Except as provided in Section 9.1 of this Act [225 ILCS 425/9.1] [relating to location information], without the prior consent of the debtor given directly to the collection agency, the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a collection agency may not communicate,

-3-

in connection with the collection of any debt, with any person other than the debtor, the debtor's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the collection agency."

23.     A mail vendor does not have "a legitimate business need for the information" and disclosure to a mail vendor is prohibited by  225 ILCS 425/9.2(b).

24.     Due to Defendant's communication to this letter vendor,  information about Plaintiff is within the possession of an unauthorized third-party, which has intruded into Plaintiff's private affairs.

25.     If a debt collector "conveys information regarding the debt to a third party -- informs the third party that the debt exists or provides information about the details of the debt -- then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

26.     Firstsource Advantage, LLC unlawfully communicates with the unauthorized third-party letter vendor solely for the purpose of streamlining its generation of profits without regard to the propriety and privacy of the information which it discloses to such third-party.

27.     In its reckless pursuit of a business advantage, Firstsource Advantage, LLC disregarded the known, negative effect that disclosing personal  information to an unauthorized third-party has on consumers.

## THE FAIR DEBT COLLECTION PRACTICES ACT

28.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e).  This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt.  It also requires debt collectors to

-4-

give debtors certain information about alleged debts, and about their rights as consumers. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

29.     In enacting the FDCPA, Congress recognized the "universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule.... [The] vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." 95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

30.     As noted in *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008), "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated." See *Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D.Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); *Owens v. Hellmuth & Johnson PLLC*, 550 F.Supp.2d 1060, 1063 (D.Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose").

31.     "Congress intended the Act to be enforced primarily by consumers...." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982).

32.     Courts hold that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer," *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), or "least sophisticated consumer," *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2nd Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985). The

standard is an objective one – whether any particular consumer was misled is not an element of a cause of action. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether the plaintiff was deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991).

33.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

34.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Technol.*, 865 F. Supp. 1443, 1450 (D.Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982).

## THE ILLINOIS COLLECTION AGENCY ACT

35.     The ICAA reflects a determination that "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is further declared to be the public policy of this State to protect consumers against debt collection abuse." 225 ILCS 425/1a.

36.     The ICAA contains a series of prohibitions, similar but not identical to those in the FDCPA.

37.     There is a private right of action for violation of 225 ILCS 425/9, *Sherman v. Field*

-6-

*Clinic,* 74 Ill. App. 3d 21, 392 N.E.2d 154 (1ˢᵗ Dist. 1979).

## REQUIREMENTS FOR CLASS CERTIFICATION

38.     Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, states:

Prerequisites for the maintenance of a class action.

An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1)     The class is so numerous that joinder of all members is impracticable.

(2)     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)     The representative parties will fairly and adequately protect the interest of the class.

(4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

Although the statute was modeled after Rule 23 of the Federal Rule of Civil Procedure, some differences exist between the two. *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill. App. 3d 995, 999, 574 N.E.2d 760, 762 (1st Dist. 1991).

39.     The class action determination is to be made as soon as practicable after the commencement of an action brought as a class action and before any consideration of the merits. 735 ILCS 5/2-802.  The circuit court has discretion as to whether an action may proceed as a class action. *Haywood v. Superior Bank,* 244 Ill. App. 3d 326, 328, 614 N.E.2d 461, 463 (1st Dist. 1993) (overturning the lower court's denial of class certification in a landlord-tenant case).

40.     Class actions are essential to enforce laws protecting consumers.  As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups.  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting.  The alternatives to the class action  -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides

-7-

restitution to the injured, and deterrence of the wrongdoer. (574 N.E.2d at 764, 766)

41.     As demonstrated below, each of the requirements for class certification is met.

42.     Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999); *Nielsen v. Dickerson*, 98cv5909, 1999 WL 350649, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 20, 1999); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Shaver v. Trauner*, 97cv1309, 1998 WL 35333712, 1998 U.S. Dist. LEXIS 19647 (C.D. Ill. May 29, 1998*) report and recommendation adopted*, 1998 WL 35333713, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); *Carroll v. United Compucred Collections, Inc.*, 1:99cv0152, 2002 WL 31936511, 2002 U.S. Dist. LEXIS 25032 (M.D. Tenn. Nov. 15, 2002), *report and recommendation adopted in part*, 2003 WL 1903266,  2003 U.S. Dist. LEXIS 5996 (M.D. Tenn. Mar. 31, 2003) *aff'd*, 399 F.3d 620 (6th Cir. 2005); *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291 (N.D. Ill. 2007); *Keele v. Wexler*, 95cv3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill. Mar. 19, 1996), *aff'd*, 149 F.3d 589 (7th Cir. 1998); *Miller v. Wexler & Wexler*, 97cv6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 6, 1998); *Wilborn v. Dun & Bradstreet*, 180 F.R.D. 347  (N.D. Ill. 1998); *Arango v. GC Servs., LP*, 97cv7912, 1998 WL 325257,  1998 U.S. Dist. LEXIS 9124 (N.D. Ill. June 11, 1998) (misleading collection letters); *Avila v. Van Ru Credit Corp.*, 94cv3234, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. Jan. 31, 1995), aff'd sub nom. *Avila v. Rubin,*  84 F.3d 222 (7th Cir. 1996); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008); *Cotton v. Asset Acceptance*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified);  *Carr v. Trans Union Corp.*, 94cv0022, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. Jan. 12, 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. Trans Union Corp.*, 93cv6106, 1995 WL 20821, 1995 U.S. Dist.

-8-

LEXIS 578 (E.D. Pa. Jan. 12, 1995) (same); *Gammon v. GC Services, L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995) (similar); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988); *West v. Costen*, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees; *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

**Numerosity**

43.     Section 2-801(1) parallels the language of Federal Rule of Civil Procedure 23(a)(1); therefore, federal case law is instructive on the numerosity requirements under the Illinois Rules. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n*, 198 Ill. App. 3d 445, 450, 555 N.E.2d 1150, 1153 (5th Dist. 1990). The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 members sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 members sufficient).

44.     Illinois case law further indicates that "[t]he number of class members is relevant, not determinative." *Wood River Area Dev. Corp.,* 198 Ill. App. 3d at 450, 555 N.E. 2d at 1153. Where the class size is smaller, other factors may come into play to demonstrate that joinder is impractical, including: (1) geographical spread of class members, (2) ease of identifying and locating class members, (3) the knowledge and sophistication of class members and their need for protection, (4) the size of class members' claims, and (5) the nature of the case. *Id.* at 450-51, 555 N.E. 2d at 1153-

54.

45.     It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Lit.,* 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).   The Court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir. 1983). "The court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential to most cases in order to reach a class determination. . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1995), §7.22.

46.     In the present case, Plaintiff alleges, based on the volume of Defendant's collection activity and the use of form letters, that there are more than 40 class members,  making them so numerous that joinder is impracticable.

47.     While discovery will be needed to determine the precise class size, it is reasonable to infer that numerosity is satisfied.   *Wood River Area Dev. Corp.,* 198 Ill. App. 3d at 450, 555 N.E.2d at 1153 (concurring with a leading scholar's assertion that a class size of 40 clearly satisfies numerosity and that a class size of 25 likely satisfies numerosity); *Swiggett v. Watson,* 441 F.Supp. 254, 256 (D.Del. 1977) (an action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, the fact the Department of Motor Vehicles issued printed forms for such transfer was in of itself sufficient to show that the numerosity requirement was satisfied); *Westcott v. Califano,* 460 F. Supp. 737, 744 (D.Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); *Carr v. Trans Union Corp., supra* (Fair Debt Collection Practices Act class

-10-

certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); *Colbert v. Trans Union Corp., supra* (same).

**Common Questions and Predominance**

48. A common question may be shown when the claims of the individual members of the class are based on the common application of a statute or they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.,* 230 Ill. App. 3d 628, 634, 595 N.E.2d 149, 153 (1st Dist.1992).

49. In the present case, the predominant common questions are whether Defendant sends personal information to letter vendors and whether such practice violates the FDCPA (Count I) and ICAA (Count II).

50. Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D. Ill. 1984).

51. The only individual issue is the identification of the class members, a matter easily ascertainable from the files of Defendant.

52. Questions readily answerable from a party's files do not present an obstacle to class certification. *Heastie v. Community Bank,* 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

**Adequacy of Representation**

53. The class action statute requires that the class representative provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the attorney for the class must be qualified, experienced, and generally able to conduct the proposed

-11-

litigation; and (b) the representative must not have interests antagonistic to those of the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

54.     Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit B, which sets forth counsel's qualifications.

55.     There are no conflicts between Plaintiff and the class members.

**Appropriateness of Class Action**

56.     Efficiency is the primary focus in determining whether the class action is an appropriate method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D.Ill. 1972). It is proper for a court, in deciding this issue, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

57.     In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are undoubtedly unaware that their rights are being violated. In addition, the modest size of the claims makes it unlikely that consumers would be able to pay to retain counsel to protect their rights on an individual basis.

58.     The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Lit.,* 75 F.R.D. 727, 732 (N.D.Ill. 1977) (citations omitted).) Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be

-12-

able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions...may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank,* 156 F.R.D. 615 at 628, 629 (E.D.Pa 1994).

## CONCLUSION

59.     The Court should certify this action as a class action.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Julia Ozello
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
 courtecl@edcombs.com
Atty. No. 9425 (DuPage)

T:\38452\Pleading\Plaintiff's Motion for class certification_Pleading.wpd

-13-

## **CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, certify that I had a copy of this document placed for service with the complaint.


*/s/Daniel A. Edelman*
Daniel A. Edelman

# EXHIBIT A

December 20, 2021

**firstsource**

Firstsource Advantage LLC
205 Bryant Woods South
Amherst, NY 14228
1-800-773-7530 from
8am-8pm EST Monday- Friday and
8am-12pm EST Saturday
www.firstsourceadvantage.com

To    SHERRY L ANTONOPOULOS

Reference Number: ▮▮▮▮

Firstsource Advantage, LLC is a debt collector. We are trying to collect a debt that you owe to ▮▮▮. We will use any information ...

**Our information shows:**

You had ...
account from ...
ending in ▮▮▮

As of August 22, 2020 you owed:  ▮▮▮

Between August 22, 2020 and today:

You were charged this amount in interest  + $0.00

You were charged this amount in fees  + $0.00

You paid or were credited this amount + $0.00
toward the debt

Total amount of the debt now:  ▮▮▮

**How can you dispute the debt?**

- Call or write to us by January 27, 2022, to dispute all or part of the debt. If you do not, we will assume that our information is correct.
- If you write to us by January 27, 2022, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or you may write to us without the form. You may also include supporting documents.

**What else can you do**

- Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by January 27, 2022, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.
- Contact us about your payment options.
- Póngase en contacto con nosotros para solicitar una copia de este formulario en español.

Notice: See reverse side for important information.

---

**How do you want to respond?**

Check all that apply:

☐ I want to dispute the debt because I think:
  ☐ This is not my debt.
  ☐ The amount is wrong.
  ☐ Other (please describe on the reverse or attach additional information).

☐ I want you to send me the name and address of the original creditor.

☐ I enclosed this amount: $ ▮▮▮

Make your check payable to Firstsource Advantage. Include the reference number ▮▮▮.

☐ Quiero este formulario en español.

▮▮▮
RETURN SERVICE REQUESTED

December 20, 2021

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
▮▮▮▮

**Mail this form to:**

FIRSTSOURCE ADVANTAGE LLC
PO BOX ...
BUFFALO, NY ...

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

# EXHIBIT B

Atty. No. 9425

**IN THE CIRCUIT COURT FOR THE 18ᵀᴴ JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**

SHERRY ANTONOPOULOS,                    )
on behalf of Plaintiff and a class,     )
                                        )
                Plaintiff,              )
                                        )
        vs.                             )
                                        )
FIRSTSOURCE ADVANTAGE, LLC,             )
                                        )
                Defendant.              )

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020 and Cathleen M. Combs at the end of 2021.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 5, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and*

1

*Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others.   Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature.  He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

3.     **Cathleen M. Combs** (retired December 2021) is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences,  and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010).  Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995);  *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and  *Tocco v. Real Time Resolutions*, 48 F.Supp.3d 535 (S.D.N.Y. 2014).  She is a member of the Illinois bar and admitted to practice in the following courts:  United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, and Tenth Circuit Court of Appeals.  She is a member of the Northern District of Illinois trial bar.

4.     **James O. Latturner** (retired 2020) is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law*

(Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5.　　**Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824, 2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11cv4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002); *Romaker v. Crossland Mtg. Co.*, 94cv3328, 1996 WL 254299, 1996 U.S.Dist. LEXIS 6490 (N.D.Ill. May 10, 1996); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

6.　　**Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) ; *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00cv186, 2002 WL 31369747, 2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09cv2116, 2009 WL

3

2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.,* 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.,* 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

7.     **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.,* 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.,* 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.,* 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.,* 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.,* 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.,* 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.,* 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC,* 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC,* 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.,* No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

8.     **Cassandra P. Miller** is a graduate of the University of Wisconsin  – Madison (B.A. 2001) and John Marshall Law School (now University of Illinois Chicago School of Law) (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.,* 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.,* 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.,* 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.,* 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.,* 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC,* 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

9.     **Associates**:

a.     **Carly Roman (formerly Cengher)** is a graduate of the University of Oregon (B.A., 2011),  the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019).  She is a member of the Illinois Bar.

b.     **Stephen J. Pigozzi** is a graduate of the University of Wisconsin - Madison (B.A. 2007) and Chicago-Kent College of Law (J.D. 2018).  He is a member of the Illinois Bar.

c.     **Julia Ozello** is a graduate of the University of Chicago (B.A. 2016) and Case Western University School of Law (J.D. 2020).  She is a member of the Illinois Bar.

d.     **Matthew J. Goldstein** is a graduate of Lake Forest College (B.A., *magna cum laude,* 2018) and the University of Illinois Chicago School of Law (J.D., May 2021).  He is a member of the Illinois Bar.

10.     The firm also has a dozen legal assistants and support staff.

11.     Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

12. **Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual. Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12cv7235, 2013 WL 1858587, 2013 U.S. Dist. LEXIS 62648 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.,* , 949 F. Supp. 2d 807 (N.D.Ill. 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 955 F. Supp. 2d 825 (N.D.Ill. 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93cv4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98cv6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1,

5

1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

13.    *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  Mr. Edelman argued it before the Supreme Court and Seventh Circuit.  *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters."  *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements.  *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

14.    **Debtors' rights**.  Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008)  (summary judgment denied)  (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.*, 05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

15.    **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 2010).

16.    The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied*, 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014).  The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

17.    **Fair Credit Reporting Act:**  The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.*, 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

18.    Another line of cases under the Fair Credit Reporting Act which we have brought,

6

primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

19.     **Class action procedure:**  Important decisions include *McMahon v. LVNV Funding, LLC,* 807 F.3d 872 (7th Cir. 2015); *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.,* 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness),  and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

20.     **Landlord-tenant:**  The firm has brought more than 20 class actions against landlords to enforce tenants' rights.  Claims include  failing to pay interest on security deposits or commingling security deposits.  Reported decisions include *Wang v. Williams,* 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship,* 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.,*  344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

21.     **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, *In re Mortgage Escrow Deposit Litigation,* and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,* as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525 (7th Cir.  2007); *Johnson v. Thomas,* 342 Ill.App.3d 382,  794 N.E.2d 919 (1st Dist. 2003);  *Handy v. Anchor Mortgage Corp.,* 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.,* 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB,* 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC,* 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.,* 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.,* 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.,* 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.,* 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton,* 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L Ass'n,* 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.,* 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.,* 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.,* 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.,* 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation,* M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L Ass'n,* 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

22.     The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

23.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

7

24.  **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck,* 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.,* 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services,* 230 F.3d 439 (1st Cir. 2000).

25.  **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

      a.  Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.,* 155 F.3d 927 (7th Cir. 1998).

      b.  Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.,* 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb,* 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.,* 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.,* 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.,* 888 F. Supp. 891 (N.D.Ill. 1995).

      c.  Spot delivery. *Janikowski v. Lynch Ford, Inc.,* 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.,* 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb,* 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

      d.  Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.,* 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank,* 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.,* 884 F. Supp. 288 (N.D.Ill. 1995).

      e.  Improper obligation of cosigners. *Lee v. Nationwide Cassell,* 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.,* 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank,* 219 F. Supp. 2d 935 (N.D.Ill. 2002).

      f.  Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank,* 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

26.  These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler,* and *Shields,* resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

27.  **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC,* 764 F.3d 765 (7th Cir. 2014), *cert. denied,* 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.,* 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.,* 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.,* 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC,* 931 F.Supp.2d

862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

28.     **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.     Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.     The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.     Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.     Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.     Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

29.     **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992

9

U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

30. *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

31. **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1ˢᵗ Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

32. Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

33. *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

Executed at Chicago, Illinois.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**Atty. No. 9425**

**IN THE CIRCUIT COURT FOR THE 18ᵗʰ JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 16544250
2022LA000116
FILEDATE: 2/2/2022 11:47 AM
Date Submitted: 2/2/2022 11:47 AM
Date Accepted: 2/2/2022 1:31 PM
SM

|  |  |  |
|---|---|---|
| SHERRY ANTONOPOULOS, | ) | |
| on behalf of Plaintiff and a class, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2022LA000116 |
| vs. | ) | |
| | ) | |
| FIRSTSOURCE ADVANTAGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF MOTION**

**TO:** FIRSTSOURCE ADVANTAGE, LLC
c/o C T Corporation System
208 S. La Salle St., Suite 814
Chicago, IL 60604

PLEASE TAKE NOTICE that on Tuesday, March 22ⁿᵈ, 2022, at 9:00am, we will appear by videoconference via www.zoom.us before the presiding Judge in Room 2008 of the DuPage County Courthouse, 505 N. County Farm Road, Wheaton, IL 60187, and present: **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**, a copy of which is attached hereto and hereby served upon you.

Respectfully Submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Julia Ozello
**EDELMAN, COMBS, LATTURNER**
      **& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com
**Atty. No. 9425**

1

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, certify that I had a copy of this document placed for service with the complaint.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

2

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 16544250
2022LA000116
FILEDATE: 2/2/2022 11:47 AM
Date Submitted: 2/2/2022 11:47 AM

Date Accepted: 2/2/2022 1:31 PM
SM

Atty. No. 9425

## IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| SHERRY ANTONOPOULOS,<br>on behalf of Plaintiff and a class, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2022LA000116 |
| vs. | ) | |
| | ) | |
| FIRSTSOURCE ADVANTAGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, Sherry Antonopoulos, respectfully requests that the Court order that this action, alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA"), may proceed on behalf of a class against Defendant Firstsource Advantage, LLC.

The class consists of (a) all individuals in DuPage County (b) with respect to whom Defendant had a letter prepared and sent by a letter vendor (c) on behalf of the same creditor as Exhibit A, (d) which letter was sent at any time during a period beginning 1 year prior to the filing of this action and ending 30 days after the filing of this action.

Plaintiff is required to file a motion for class certification with the Complaint, *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060, and may request leave to supplement it later.

In support of this motion, Plaintiff states:

### NATURE OF THE CASE

1. Plaintiff Sherry Antonopoulos is a natural person residing in Carol Stream, Illinois.

2. Defendant Firstsource Advantage, LLC is a collection agency engaged in the business of collecting debts.

-1-

3.      Firstsource Advantage, LLC is engaged in the sole or principal business of collecting consumer debts, using the mails and telephone system for that purpose.

4.      Upon information and belief, almost all of Defendant Firstsource Advantage, LLC's resources are devoted to debt collection.

5.      Upon information and belief, almost all of Firstsource Advantage, LLC's revenues are derived from debt collection.

6.      Upon information and belief, almost all of Firstsource Advantage, LLC's expenses are related to debt collection.

7.      Upon information and belief, Defendant Firstsource Advantage, LLC has over 900 employees engaged in debt collection.

8.      Firstsource Advantage, LLC is a "debt collector" within the meaning of the FDCPA.

9.      Defendant Firstsource Advantage, LLC is a collection agency as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

10.     Defendant Firstsource Advantage, LLC holds a license under the ICAA.

11.     On or about December 20, 2021, Firstsource Advantage, LLC caused a letter vendor to send Plaintiff the form letter in Exhibit A.

12.     In order to have the letter vendor send Plaintiff the letter in Exhibit A, Defendant had to furnish the letter vendor with Plaintiff's name and address, the status of Plaintiff as a debtor, details of Plaintiff's alleged debt, and other personal information.

13.     The letter vendor then populated some or all of this information into a prewritten template, printed, and mailed the letter to Plaintiff.

14.     The FDCPA defines "communication" at 15 U.S.C. § 1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

15.     The sending of an electronic file containing information about Plaintiff's purported debt to a letter vendor is therefore a communication.

-2-

16.     Firstsource Advantage, LLC's communication to the letter vendor was in connection with the collection of a debt since it involved disclosure of the debt to a third-party with the objective being communication with and motivation of the consumer to pay the alleged debt.

17.     Plaintiff never consented to having Plaintiff's personal and confidential information, concerning the debt or otherwise, shared with anyone else.

18.     In limiting disclosures to third parties, the FDCPA states, at 15 U.S.C. §1692c(b): "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

19.     The letter vendor used by Firstsource Advantage, LLC as part of its debt collection effort against Plaintiff does not fall within any permitted exception provided for in 15 U.S.C. §1692c(b).

20.     The same conduct also violated the ICAA, 225 ILCS 425/9.

21.     225 ILCS 425/9(a)(21) prohibits a collection agency or debt buyer "Disclosing or threatening to disclose information relating to a debtor's debt to any other person except where such other person has a legitimate business need for the information or except where such disclosure is permitted by law."

22.     The instances in which disclosure is permitted by law are set forth in 225 ILCS 425/9.2(b), which provides that "Except as provided in Section 9.1 of this Act [225 ILCS 425/9.1] [relating to location information], without the prior consent of the debtor given directly to the collection agency, the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a collection agency may not communicate,

-3-

in connection with the collection of any debt, with any person other than the debtor, the debtor's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the collection agency."

23. A mail vendor does not have "a legitimate business need for the information" and disclosure to a mail vendor is prohibited by 225 ILCS 425/9.2(b).

24. Due to Defendant's communication to this letter vendor, information about Plaintiff is within the possession of an unauthorized third-party, which has intruded into Plaintiff's private affairs.

25. If a debt collector "conveys information regarding the debt to a third party -- informs the third party that the debt exists or provides information about the details of the debt -- then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

26. Firstsource Advantage, LLC unlawfully communicates with the unauthorized third-party letter vendor solely for the purpose of streamlining its generation of profits without regard to the propriety and privacy of the information which it discloses to such third-party.

27. In its reckless pursuit of a business advantage, Firstsource Advantage, LLC disregarded the known, negative effect that disclosing personal information to an unauthorized third-party has on consumers.

## THE FAIR DEBT COLLECTION PRACTICES ACT

28. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to

-4-

give debtors certain information about alleged debts, and about their rights as consumers. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

29.     In enacting the FDCPA, Congress recognized the "universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule.... [The] vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." 95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

30.     As noted in *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008), "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated." See *Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D.Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); *Owens v. Hellmuth & Johnson PLLC*, 550 F.Supp.2d 1060, 1063 (D.Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose").

31.     "Congress intended the Act to be enforced primarily by consumers...." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982).

32.     Courts hold that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer," *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), or "least sophisticated consumer," *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2nd Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985). The

standard is an objective one – whether any particular consumer was misled is not an element of a

cause of action. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether

the plaintiff was deceived or misled, but rather whether an unsophisticated consumer would have

been misled." *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991).

33.    Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et

seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes.

*Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

34.    Statutory damages are recoverable for violations, whether or not the consumer

proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *Baker v. G. C. Servs.*

*Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 727

and n. 3 (D. Conn. 1990); *Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990); *Riveria v. MAB*

*Collections, Inc.*, 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Technol.*, 865 F. Supp.

1443, 1450 (D.Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982).

## THE ILLINOIS COLLECTION AGENCY ACT

35.    The ICAA reflects a determination that "The practice as a collection agency by any

entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to

be subject to regulation and control in the public interest. It is further declared to be a matter of

public interest and concern that the collection agency profession merit and receive the confidence of

the public and that only qualified entities be permitted to practice as a collection agency in the State

of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is

further declared to be the public policy of this State to protect consumers against debt collection

abuse." 225 ILCS 425/1a.

36.    The ICAA contains a series of prohibitions, similar but not identical to those in the

FDCPA.

37.    There is a private right of action for violation of 225 ILCS 425/9, *Sherman v. Field*

*Clinic,* 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

## REQUIREMENTS FOR CLASS CERTIFICATION

38.    Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, states:

Prerequisites for the maintenance of a class action.

An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1)    The class is so numerous that joinder of all members is impracticable.

(2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)    The representative parties will fairly and adequately protect the interest of the class.

(4)    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

Although the statute was modeled after Rule 23 of the Federal Rule of Civil Procedure, some differences exist between the two. *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill. App. 3d 995, 999, 574 N.E.2d 760, 762 (1st Dist. 1991).

39.    The class action determination is to be made as soon as practicable after the commencement of an action brought as a class action and before any consideration of the merits. 735 ILCS 5/2-802. The circuit court has discretion as to whether an action may proceed as a class action. *Haywood v. Superior Bank,* 244 Ill. App. 3d 326, 328, 614 N.E.2d 461, 463 (1st Dist. 1993) (overturning the lower court's denial of class certification in a landlord-tenant case).

40.    Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides

-7-

restitution to the injured, and deterrence of the wrongdoer. (574 N.E.2d at 764, 766)

41.    As demonstrated below, each of the requirements for class certification is met.

42.    Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999); *Nielsen v. Dickerson*, 98cv5909, 1999 WL 350649, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 20, 1999); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Shaver v. Trauner*, 97cv1309, 1998 WL 35333712, 1998 U.S. Dist. LEXIS 19647 (C.D. Ill. May 29, 1998*) report and recommendation adopted*, 1998 WL 35333713, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); *Carroll v. United Compucred Collections, Inc.*, 1:99cv0152, 2002 WL 31936511, 2002 U.S. Dist. LEXIS 25032 (M.D. Tenn. Nov. 15, 2002), *report and recommendation adopted in part*, 2003 WL 1903266, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn. Mar. 31, 2003) *aff'd*, 399 F.3d 620 (6th Cir. 2005); *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291 (N.D. Ill. 2007); *Keele v. Wexler*, 95cv3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill. Mar. 19, 1996), *aff'd*, 149 F.3d 589 (7th Cir. 1998); *Miller v. Wexler & Wexler*, 97cv6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 6, 1998); *Wilborn v. Dun & Bradstreet*, 180 F.R.D. 347 (N.D. Ill. 1998); *Arango v. GC Servs., LP*, 97cv7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. June 11, 1998) (misleading collection letters); *Avila v. Van Ru Credit Corp.*, 94cv3234, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. Jan. 31, 1995), aff'd sub nom. *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008); *Cotton v. Asset Acceptance*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill. June 26, 2008) (class certified); *Carr v. Trans Union Corp.*, 94cv0022, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. Jan. 12, 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. Trans Union Corp.*, 93cv6106, 1995 WL 20821, 1995 U.S. Dist.

-8-

LEXIS 578 (E.D. Pa. Jan. 12, 1995) (same); *Gammon v. GC Services, L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995) (similar); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988); *West v. Costen*, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees; *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

**Numerosity**

43.     Section 2-801(1) parallels the language of Federal Rule of Civil Procedure 23(a)(1); therefore, federal case law is instructive on the numerosity requirements under the Illinois Rules. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n*, 198 Ill. App. 3d 445, 450, 555 N.E.2d 1150, 1153 (5th Dist. 1990). The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 members sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 members sufficient).

44.     Illinois case law further indicates that "[t]he number of class members is relevant, not determinative." *Wood River Area Dev. Corp.,* 198 Ill. App. 3d at 450, 555 N.E. 2d at 1153. Where the class size is smaller, other factors may come into play to demonstrate that joinder is impractical, including: (1) geographical spread of class members, (2) ease of identifying and locating class members, (3) the knowledge and sophistication of class members and their need for protection, (4) the size of class members' claims, and (5) the nature of the case. *Id.* at 450-51, 555 N.E. 2d at 1153-

54.

45.     It is not necessary that the precise number of class members be known: "A class

action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Lit.,*

95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).   The Court

may "make common sense assumptions in order to find support for numerosity." *Evans v. United*

*States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir. 1983).   "The court may assume sufficient

numerousness where reasonable to do so in absence of a contrary showing by defendant, since

discovery is not essential to most cases in order to reach a class determination. . . . Where the exact

size of the class is unknown, but it is general knowledge or common sense that it is large, the court

will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class*

*Actions* (3d ed. 1995), §7.22.

46.     In the present case, Plaintiff alleges, based on the volume of Defendant's collection

activity and the use of form letters, that there are more than 40 class members,  making them so

numerous that joinder is impracticable.

47.     While discovery will be needed to determine the precise class size, it is reasonable to

infer that numerosity is satisfied.   *Wood River Area Dev. Corp.,* 198 Ill. App. 3d at 450, 555 N.E.2d at

1153 (concurring with a leading scholar's assertion that a class size of 40 clearly satisfies numerosity

and that a class size of 25 likely satisfies numerosity); *Swiggett v. Watson,* 441 F.Supp. 254, 256

(D.Del. 1977) (an action challenging transfers of title pursuant to Delaware motor vehicle repairer's

lien, the fact the Department of Motor Vehicles issued printed forms for such transfer was in of

itself sufficient to show that the numerosity requirement was satisfied); *Westcott v. Califano,* 460 F.

Supp. 737, 744 (D.Mass. 1978) (in action challenging certain welfare policies, existence of policies

and 148 families who were denied benefits to which policies applied sufficient to show numerosity,

even though it was impossible to identify which of 148 families were denied benefits because of

policies complained of); *Carr v. Trans Union Corp., supra* (Fair Debt Collection Practices Act class

-10-

certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); *Colbert v. Trans Union Corp., supra* (same).

## Common Questions and Predominance

48.     A common question may be shown when the claims of the individual members of the class are based on the common application of a statute or they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.,* 230 Ill. App. 3d 628, 634, 595 N.E.2d 149, 153 (1st Dist.1992).

49.     In the present case, the predominant common questions are whether Defendant sends personal information to letter vendors and whether such practice violates the FDCPA (Count I) and ICAA (Count II).

50.     Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D. Ill. 1984).

51.     The only individual issue is the identification of the class members, a matter easily ascertainable from the files of Defendant.

52.     Questions readily answerable from a party's files do not present an obstacle to class certification. *Heastie v. Community Bank,* 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

## Adequacy of Representation

53.     The class action statute requires that the class representative provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the attorney for the class must be qualified, experienced, and generally able to conduct the proposed

litigation; and (b) the representative must not have interests antagonistic to those of the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

54.     Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit B, which sets forth counsel's qualifications.

55.     There are no conflicts between Plaintiff and the class members.

**Appropriateness of Class Action**

56.     Efficiency is the primary focus in determining whether the class action is an appropriate method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D.Ill. 1972). It is proper for a court, in deciding this issue, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

57.     In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are undoubtedly unaware that their rights are being violated. In addition, the modest size of the claims makes it unlikely that consumers would be able to pay to retain counsel to protect their rights on an individual basis.

58.     The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Lit.,* 75 F.R.D. 727, 732 (N.D.Ill. 1977) (citations omitted).) Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be

able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions...may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank,* 156 F.R.D. 615 at 628, 629 (E.D.Pa 1994).

## CONCLUSION

59.     The Court should certify this action as a class action.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Julia Ozello
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
 courtecl@edcombs.com
Atty. No. 9425 (DuPage)

T:\38452\Pleading\Plaintiff's Motion for class certification_Pleading.wpd

## **CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, certify that I had a copy of this document placed for service with the complaint.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

-14-

# EXHIBIT A

December 20, 2021



**firstsource**

Firstsource Advantage, LLC
205 Bryant Woods South
Amherst, NY 14228
1-800-773-7530 from
8am-8pm EST Monday- Friday and
8am-12pm EST Saturday
www.firstsourceadvantage.com

To    SHERRY L ANTONOPOULOS

Reference Number:

Firstsource Advantage, LLC is a debt collector. We are trying to collect a debt that you owe to ...

**Our information shows**

You had a
account form
ending in

As of August 22, 2020 you owed

Between August 22, 2020 and today

You were charged this amount in interest    + $0.00

You were charged this amount in fees    + $0.00

You paid or were credited this amount
toward this debt    - $0.00

Total amount of the debt now:

**How can you dispute the debt?**
- Call or write to us by January 27, 2022, to dispute all or part of the debt. If you do not we will assume that our information is correct
- If you write to us by January 27, 2022, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or you may write to us without the form. You may also include supporting documents

**What else can you do**
- Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by January 27, 2022, we must stop collection until we send you that information. You may use the form below or write us to that form
- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For more, you may have the right to stop or limit how we contact you
- Contact us about your payment options
- Pongase en contacto con nosotros para solicitar una copia de este formulario en español

**Notice: See reverse side for important information.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**How do you want to respond?**

☐ I want to dispute the debt because I think
  ☐ This is not my debt
  ☐ The amount is wrong
  ☐ Other (please describe on the reverse or attach additional information)

☐ I want you to send me the name and address of the original creditor

☐ I enclosed this amount: $ _____

☐ Quiero este formulario en español

**Mail this form to:**

Firstsource Advantage LLC
PO Box ...
Buffalo NY ...

# EXHIBIT B

Atty. No. 9425

## IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

| | | |
|---|---|---|
| SHERRY ANTONOPOULOS, on behalf of Plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) ) | 2022LA000116 |
| vs. | ) ) | |
| FIRSTSOURCE ADVANTAGE, LLC, | ) ) | |
| Defendant. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1. Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020 and Cathleen M. Combs at the end of 2021.

2. **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 5, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and*

1

*Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3.      **Cathleen M. Combs** (retired December 2021) is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC,* 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC,* 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson,* 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.,* 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer,* 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services,* 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.,* 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC,* 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions,* 48 F.Supp.3d 535 (S.D.N.Y. 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, and Tenth Circuit Court of Appeals. She is a member of the Northern District of Illinois trial bar.

4.      **James O. Latturner** (retired 2020) is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois,* 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations,* 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law*

(Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5. **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824, 2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11cv4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002); *Romaker v. Crossland Mtg. Co.*, 94cv3328, 1996 WL 254299, 1996 U.S.Dist. LEXIS 6490 (N.D.Ill. May 10, 1996); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

6. **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) ; *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00cv186, 2002 WL 31369747, 2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lisida Rubber Prods.*, 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09cv2116, 2009 WL

3

2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

7.     **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude*, 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

8.     **Cassandra P. Miller** is a graduate of the University of Wisconsin  – Madison (B.A. 2001) and John Marshall Law School (now University of Illinois Chicago School of Law) (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

9.     **Associates**:

     a.     **Carly Roman (formerly Cengher)** is a graduate of the University of Oregon (B.A., 2011),  the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019).  She is a member of the Illinois Bar.

     b.     **Stephen J. Pigozzi** is a graduate of the University of Wisconsin - Madison (B.A. 2007) and Chicago-Kent College of Law (J.D. 2018).  He is a member of the Illinois Bar.

     c.     **Julia Ozello** is a graduate of the University of Chicago (B.A. 2016) and Case Western University School of Law (J.D. 2020).  She is a member of the Illinois Bar.

     d.     **Matthew J. Goldstein** is a graduate of Lake Forest College (B.A., *magna cum laude*, 2018) and the University of Illinois Chicago School of Law (J.D., May 2021).  He is a member of the Illinois Bar.

10.     The firm also has a dozen legal assistants and support staff.

11.     Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

4

12. **Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual. Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12cv7235, 2013 WL 1858587, 2013 U.S. Dist. LEXIS 62648 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, , 949 F. Supp. 2d 807 (N.D.Ill. 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 955 F. Supp. 2d 825 (N.D.Ill. 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93cv4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98cv6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1,

1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

13.   *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  Mr. Edelman argued it before the Supreme Court and Seventh Circuit.  *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters."  *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

14.   **Debtors' rights**.  Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied)  (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,* 05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

15.   **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

16.   The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014).  The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

17.   **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

18.   Another line of cases under the Fair Credit Reporting Act which we have brought,

primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

19. **Class action procedure:** Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.*, 201 Ill. 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness), and *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

20. **Landlord-tenant:** The firm has brought more than 20 class actions against landlords to enforce tenants' rights. Claims include failing to pay interest on security deposits or commingling security deposits. Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

21. **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Johnson v. Thomas*, 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n*, 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.*, 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

22. The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

23. The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

24. **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

25. **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a. Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b. Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

c. Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d. Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).
e. Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

f. Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

26. These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

27. **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d

8

862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

28.    **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.    Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.    The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.    Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.    Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.    Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

29.    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992

9

U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

30.     *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

31.     **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

32.     Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

33.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

Executed at Chicago, Illinois.


                                                      */s/ Daniel A. Edelman*
                                                      Daniel A. Edelman


EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)